IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RANDY EDWARD GOODRUM, § <br> Petitioner, § <br> § <br> v. § <br> § <br> NATHANIEL QUARTERMAN, § <br> Respondent. § | CIVIL ACTION NO. H-06-1329 |

## MEMORANDUM OPINION AND ORDER

Randy Edward Goodrum, an inmate incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division, proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Respondent filed a motion for summary judgment, to which petitioner responded. (Docket Entries No. 12, 13).

After considering the pleadings, the motion, the response, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this case.

### I. PROCEDURAL HISTORY

Petitioner pleaded guilty to three charges of aggravated sexual assault with a deadly weapon in June, 2004 and was sentenced to ten years incarceration.[1] The convictions were affirmed on appeal. *Goodrum v. State*, No. 08-04-00266-CR, 2005 WL 2592219 (Tex. App.– El Paso 2005, pet. ref'd). The Texas Court of Criminal Appeals refused discretionary

---

[1] At the time of the instant convictions, petitioner was serving a life sentence under a 2001 aggravated sexual assault conviction.

review. *Ex parte Goodrum*, PDR Nos. 1834-05, 1835-05, 1836-05. No state habeas proceedings were filed.

In this petition, petitioner complains that he was denied his federal constitutional right to a speedy trial. Respondent moves for summary judgment, and argues that this claim fails as a matter of law.

## II. STATEMENT OF FACTS

The state court of appeals set forth the following statement of facts in its opinion:

> Two indictments for aggravated sexual assault naming Appellant as the defendant were filed in Harris County on October 27, 2000. Another indictment for aggravated sexual assault was filed on May 18, 2001. Prior to these filings, in July of 2000, Appellant was arrested on another aggravated sexual assault case in Brazoria County. This trial concluded on September 28, 2001 with a finding of guilt and the assessment of a life term of imprisonment, and Appellant was transferred to the Texas Department of Criminal Justice. On November 12, 2001, Appellant received notice that detainers for the other offenses had been lodged. Two days later, Appellant wrote to the District Attorney's Office in Houston stating that the detainers were detrimental to his incarceration and he requested a speedy trial. Apparently, there was a fourth offense upon which a detainer had been lodged.
>
> On March 4, 2002 and May 12, 2002, Appellant wrote letters to the District Attorney's Office requesting that he be bench warranted to Houston. On January 8, 2003, Appellant wrote a letter to the Harris County District Clerk's Office requesting information regarding the pending cases. On October 19, 2003, he again wrote to the District Attorney's Office requesting information on the pending charges. He also stated that the delay was detrimental to his ability to obtain certain jobs and status at the penitentiary, and his defense was being prejudiced by the delay. By March 23, 2004, Appellant had been bench warranted to Houston and he appeared in court and he filed various motions.
>
> On May 21, 2004 and June 4, 2004, two hearings were held on Appellant's motion to dismiss for lack of speedy trial. Appellant presented three witness. The first, his mother, testified that while Appellant was in prison, she contacted the Harris County Sheriff's Department and was mistakenly told that

2

there were no charges pending against Appellant. Tracie Holley stated that she was married to Appellant's stepbrother. She testified that in 1996 and 1997, Appellant dated a lot women and due to the passage of time, she would probably not be able to identify any of the women. Christopher Fitzgerald testified that he and Appellant had been friends since about 1990. He was aware that Appellant had dated many women but save for the mother of Appellant's child, he would not be able to remember any of the women Appellant dated. On redirect-examination, Fitzgerald stated that even if Appellant had been brought to trial in 2000, he would still not have been able to remember any of the women. (FTN: Appellant argued during the hearing that his defense was based upon his contention that the charged acts were consensual and that he knew the complainants, in contravention of their prior testimony that they did not know Appellant.)

Appellant testified that the fact that detainers had been lodged caused him to not qualify for a trustee position. Also, this detainer status caused him to have to pay for college classes as opposed to receiving them without charge, and he could not obtain a job at the prison law library. The court ruled that Appellant had failed to establish prejudice with regard to his speedy trial claim and the motion was denied. After the court denied Appellant's motion to dismiss based upon the lack of a speedy trial, Appellant entered pleas of nolo contendere to three charges of aggravated sexual assault with a deadly weapon in exchange for ten years' incarceration each and the dismissal of a fourth charge, and Appellant was sentenced accordingly.

*Goodrum*, 2005 WL 2592219, at *1-2.

### III.   LEGAL BACKGROUND

**A.   Habeas Corpus Petition Under 28 U.S.C. § 2254**

Petitioner's habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA, codified as amended at 28 U.S.C. § 2254(d), significantly restricts the availability of habeas corpus relief to state prisoners. Under this statute, a petitioner retains the burden to prove he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000).

3

Under the standard established by AEDPA, a federal writ of habeas corpus may not issue with respect to any claim that was adjudicated on the merits in state court unless the state court's determination of that claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §§ 2254(d)(1), (2). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has under materially indistinguishable facts. *Williams*, 529 U.S. at 413.

A decision is an unreasonable application of federal law if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts of the inmate's case. *Id.* To be unreasonable, the state decision must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). Rather, a reversal is not required unless the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be unreasonable. *Id.* In that regard, factual findings of the state court are presumed to be correct under 28 U.S.C. § 2254(e)(1), and federal courts must defer to them unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2).

### B. Constitutional Right to a Speedy Trial

The Sixth Amendment to the United States Constitution guarantees every defendant in a criminal case the right to a speedy trial, applicable to the states through the Fourteenth Amendment. U.S. Const. amend. VI; *Barker v. Wingo*, 407 U.S. 514, 519-22 (1972). To determine whether a defendant's right to a speedy trial has been violated, courts consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's diligence in asserting his right to a speedy trial, and (4) any prejudice to him resulting from the delay. *Barker*, 407 U.S. at 530-33; *United States v. Cardona*, 302 F.3d 494, 496 (5th Cir. 2002).

The first factor, length of delay, is a "triggering mechanism" for determining whether a court is required to balance the remaining three factors. The Fifth Circuit has held that a one-year delay is sufficient to warrant judicial examination of a speedy trial claim. *See United States v. Frye*, 372 F.3d 729, 736-37 (5th Cir. 2004) (discussing the "one-year guideline" for whether a delay is sufficient to require an analysis of all four *Barker* factors). If sufficient delay is shown, the remaining three *Barker* factors then must be analyzed and all four factors considered together. The fact that a delay may be sufficiently long to trigger review of the remaining three *Barker* factors, however, does not itself establish that a defendant has satisfied the fourth *Barker* prejudice factor. *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993).

Ordinarily, the burden of demonstrating prejudice under the fourth factor rests with the defendant. *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003). If the first three *Barker* factors "weigh heavily" in favor of the defendant, prejudice may be

5

presumed, relieving him of any burden to show specific actual prejudice. *Doggett v. United States*, 505 U.S. 647, 654 (1992); *Serna-Villarreal*, 352 F.3d at 231. The Fifth Circuit also recognizes that federal courts generally have applied a presumption of prejudice under the fourth factor only when the pretrial delay exceeds five years. *See Frye*, 372 F.3d at 737; *Serna-Villarreal*, 352 F.3d at 232. Absent such a period of delay, a defendant must make a particularized showing that he has been prejudiced in order to prevail on his speedy trial claim. *Doggett*, 505 U.S. at 654-58.

In *Doggett*, the Supreme Court emphasized three interests that should be considered in determining whether a defendant has been prejudiced by pretrial delay: (1) the desire to avoid oppressive pretrial incarceration; (2) the desire to reduce anxiety and concern of the accused; and (3) the possibility that the accused's defense will be impaired by dimming memories and the loss of exculpatory evidence. *Doggett*, 505 U.S. at 654; *see also Frye*, 372 F.3d at 739-40. As to an imprisoned, convicted inmate awaiting trial, the Supreme Court has weighed the following considerations: (1) that the inmate may lose any possibility of his sentence being ordered fully or partially concurrent with the one he is serving; (2) that the conditions under which he must serve his sentence may worsen greatly by the pendency of another criminal charge against him; (3) that trial delay may result in anxiety, concern, or depression; and (4) that the delay will impair the inmate's ability to defend himself. *Smith v. Hooey*, 393 U.S. 374, 378-79 (1969).

### C. State Court's Determinations

The state trial court held a hearing on petitioner's speedy trial motion. After hearing testimony of witnesses and argument by the parties, the trial court denied the motion and found that while the first three *Barker* factors weighed in petitioner's favor, there was a lack of a sufficient showing of prejudice. (S.F. June 4, 2004 Hearing, p. 27.)

The state court on direct appeal agreed that no speedy trial violation was shown, and set forth the following analysis:

> Regarding the first factor in the *Barker* analysis, the length of delay is measured from the time the defendant is arrested or formally accused. The length of the delay is, to some extent, a triggering mechanism, so that a speedy trial claim will not be heard until passage of a period of time that is prima facie unreasonable under the circumstances. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992); *Barker*, 407 U.S. at 530. 'If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.' *Doggett*, 505 U.S. at 652. In general, delay approaching one year is sufficient to trigger a speedy trial inquiry.
>
> In the instant case, Appellant was indicted in October of 2000, and May of 2001. However, he was incarcerated and being tried in Brazoria County until September 28, 2001. Appellant's first court appearance in Houston was on March 23, 2004. Clearly, the length of delay was well beyond that required to trigger an inquiry, and this factor is weighed heavily against the State.

*Goodrum*, at *2 (citations omitted). The state court then considered the remaining *Barker* factors:

> The next *Barker* factor is the reason for the delay. The State has the initial burden of justifying a lengthy delay. In examining the reasons for the delay, we accord different weights to various reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the State. Valid reasons are not weighed against the State at all. Further, delay that is attributable in whole or in part to the defendant may constitute a waiver

of the speedy trial claim. When the record is silent as to the reason for the delay, we may presume neither a valid reason nor a deliberate attempt to prejudice the defense. In the present case, the record is silent as to reasons for the delay and we presume neither a valid reason nor a deliberate attempt by the State to delay Appellant's trial. This factor weighs against the State, but not heavily so.

The third factor that a trial court must consider is the defendant's assertion of his right to a speedy trial. The defendant is responsible for asserting or demanding his right to a speedy trial. A lengthy delay or lack of persistence in asserting the right attenuates a speedy trial claim. The State concedes and we agree that Appellant persistently demanded his right to a speedy trial in a timely manner. This factor is weighed in his favor.

The final factor we must analyze is what prejudice Appellant suffered as a result of the delay. In some cases, the delay may be so excessive so as to be presumptively prejudicial. Yet even where the delay is presumptively prejudicial, the defendant must nevertheless show that he has been prejudiced. Once the defendant has made such a showing, the burden shifts to the State. The prejudice to the defendant is assessed in the light of the interests which the speedy trial right is designed to protect: preventing oppressive pretrial incarceration; minimizing the anxiety and concern of the accused; and limiting the possibility that the defense will be impaired. The defendant has the burden to make some showing of prejudice.

*Id.*, at *3-4 (citations omitted). The state court then applied the facts to the law, and made the following determination:

> During most of the time in question, Appellant was in prison serving a life term for aggravated sexual assault. A defendant incarcerated on another charge has the same speedy trial rights as a defendant on bail. A defendant's status as a prisoner can neither prejudice his speedy trial rights nor serve as a justification for the State's delay. Prejudice to an incarcerated defendant can be: (1) loss of the chance of concurrent sentences; (2) increase in duration of his sentence or a worsening of the conditions under which he must serve his sentence; and (3) anxiety or depression because of the pending charge. (FTN: We note that Appellant did not raise the first contention at trial; accordingly, he cannot raise it on appeal. Even if he had, the fact that Appellant was serving a life sentence would ameliorate his loss of concurrent sentencing even if such had been demonstrated. Appellant asserts that this failure to be eligible

for certain jobs and trustee status, and the fact that he had to pay for schooling worsened the conditions of his incarceration. Appellant cites the *Chapman* case in support of this contention. However, in *Chapman,* the loss of trustee status and schooling opportunities was directly linked to loss of good time credit. In the present case, no such connection was made.) Regarding anxiety or depression, we note that recent case law from the Court of Criminal Appeals states that as Appellant was incarcerated most of the time in question, we are mainly concerned with whether or not Appellant's ability to defend himself was prejudiced by the delay.

Appellant asserts that his defense was impaired because: (1) the witnesses he would have called to prove he dated the complainants could no longer remember if he dated them; therefore, (2) he would have to waive his Fifth Amendment privilege and testify in his own defense. Because his conviction in the Brazoria County offense became final during the delay, it could have been used to impeach him and it would have been the only such offense that could have been used for impeachment as his other convictions were too remote.

Regarding the first contention, the trial court could have chosen to disbelieve the witnesses' testimony in its entirety. We note that given the testimony of Appellant's sister-in-law and friend, the court could have readily believed that neither witness could have remembered any of the women he dated even if the trial had occurred in 2001.

With regard to the impeachment contention, Appellant testified that he had twelve to thirteen prior felony convictions and the last felony conviction was in 1993. Appellant reasons that because these convictions were older than ten years, they were too remote to be allowed for impeachment. However, [state law] provides that a conviction for a felony or crime of moral turpitude is admissible if the probative value of the conviction outweighs its prejudicial effect. [State law] provides that evidence of a previous conviction that is more than ten years old is not admissible unless the court determines the probative value of the conviction substantially outweighs its prejudicial effect. As an exception to the general rule enunciated in Rule 609(b), it has been held that a previous conviction is not remote if the witness's lack of reformation is shown by evidence of an intervening felony conviction. Clearly, the Brazoria County conviction would not have been the only conviction available for impeachment thereby greatly lessening any prejudice caused by the delay. We find that Appellant has failed to demonstrate prejudice and that fourth factor weighs in favor of the State.

> We conclude that after giving due deference to the findings of the trial court, the balancing of the various factors as called for in *Barker* weighs against a finding that Appellant's right to a speedy trial was impaired.

*Id.*, *4-5.

## IV. ANALYSIS

Petitioner contends that under *Doggett*, the two and one-half year delay entitled him to a presumption of prejudice under the fourth *Barker* factor. Alternatively, he argues that he demonstrated specific, actual prejudice because (1) his ability to investigate his case was impaired; (2) he suffered undue anxiety and concern over the pending charges; and (3) his Brazoria County sexual assault conviction was finalized during the delay and became admissible against him as impeachment evidence.

In reviewing petitioner's claims, the state court of appeals determined that because the delay exceeded the one-year *Frye* guideline, a full *Barker* analysis was required. It then inquired whether under *Frye* the court was to presume prejudice from the delay or whether petitioner was required to show specific, actual prejudice. The state court noted that in determining whether prejudice should be presumed, a court evaluates the first three *Barker* factors. *Frye*, 372 F.3d at 736. If the first three factors "weigh heavily" against the State or in favor of petitioner, prejudice then may be presumed and the burden of proof shifts to the State to show lack of actual prejudice to petitioner.

In petitioner's case, the delay was approximately two and one-half years. The state court determined that under the first factor, this length of delay "weighed heavily against the State." *Goodrum*, at *2. The state court then found that under the second factor the record

10

was silent as to reasons for the delay, and the court presumed neither a valid reason nor a deliberate attempt by the State to delay the trial. The state court determined that the second factor weighed against the State, but not heavily so. In so doing, it rejected petitioner's argument that the state had intentionally delayed trial in order to finalize the Brazoria County charges. The state court further determined that petitioner's persistent assertion of his right to a speedy trial weighed in his favor. Thus, the state court did not find that all three factors "weighed heavily" in either party's favor.

In determining the fourth and final *Barker* factor – prejudice to petitioner as a result of the delay – the state court found that the length of the delay itself did not raise a presumption of prejudice, and that petitioner needed to show specific, actual prejudice as a result of the delay. To that end, petitioner asserted that because of the delay, (1) he could no longer impeach the complainants with evidence that they had dated him; (2) he suffered undue anxiety and concern over the pending charges; and (3) his Brazoria County sexual assault conviction became final and available for the State to use for impeachment purposes in the pending charges. (Docket Entry No. 13, p. 5.) At the speedy trial hearing, petitioner presented two witnesses who testified that they could not remember the individuals petitioner had dated during 2001. Petitioner complained that because of their lapsed memories, he would be forced to take the stand and testify that he dated the complainants and engaged in consensual sex with them.

At the hearing, petitioner's sister-in-law testified in relevant part as follows:

Q. Were [you and petitioner] close in '96, '97 when [he] lived in Pasadena?

A. Yes, we were.

Q. What kind of vehicle did [petitioner] own?

A. A limousine.

Q. Did [petitioner] date a lot of girls back them?

A. Yeah.

Q. Have you ever met or seen any of those . . . girls [petitioner] dated[?]

A. Briefly. I met some of them but only briefly.

Q. Could you come to court and positively identify any of the girls [petitioner] had been with back then?

A. No. It's been too long ago.

(S.F. June 4, 2004 Hearing, pp. 7-8.) On cross-examination, the witness testified as follows:

Q. Did he date anybody – did you meet anybody he dated in 2000?

A. Yes.

Q. Could you identify them?

A. Probably not.

Q. Give me some of the names of the people he dated.

A. The only one I can recall – because he's been with her for so long – is the mother of his daughter.

Q. What is her name?

12

Case 4:06-cv-01329   Document 15   Filed in TXSD on 11/21/06   Page 13 of 17

    A.    Ronnie.

    Q.    That's the only name you remember of any names of anybody he dated?

    A.    Yeah, because it's been so long since he's dated anyone else.

    Q.    How long is that?

    A.    I don't know. They have been togther for five years.

    Q.    So he hasn't dated anybody in that five years?

    A.    No, not that I know of.

    Q.    So, therefore, he wasn't dating anybody besides the mother of his child back in 2000?

    A.    As far as I know.

(*Id.*, pp. 8-9.) Petitioner also called a friend of his to testify at the hearing. The friend testified in relevant part as follows:

    Q.    How do you know [petitioner]?

    A.    We've been friends for about, oh, since '91, '90.

    Q.    Do you recall [petitioner] owning a limousine in '97?

    A.    In '97, yes.

    Q.    Did that make [petitioner] pretty popular with the girls?

    A.    Yes; yes, it did.

    Q.    Did [he] date few or many?

    A.    That I can recall, many.

    Q.    Did you meet most of them or all of them?

13

A.    Not that I can remember.

Q.    Could you remember any of them that you've met back then, that you might have met back then?

A.    If I saw them now?

Q.    Yes.

A.    No.

Q.    Do you remember Ronnie?

A.    Yes.

Q.    Why do you remember her?

A.    She's the mother of [petitioner's] child.

(*Id.*, pp. 10-11.)

A.    If the State had brought [petitioner] to trial in 2000, 2001, do you think your memory would have been better at that time regarding any of the girls [petitioner's] been with?

Q.    No.

(*Id.*, p. 12.)

The state court on direct appeal found that given the testimony of petitioner's proposed witnesses, "the court could have readily believed that neither witness could have remembered any of the women he dated even if the trial had occurred in 2001." *Goodrum*, at *4. To the extent the state court's statement was a factual, not a credibility, determination, petitioner presents no clear and convincing evidence to rebut its presumed correctness, and

the state court's determination was not unreasonable in light of the facts presented at the hearing.

As to the second prejudice factor, petitioner simply states that he suffered "undue anxiety and concern" because of the delay. Respondent has not challenged these assertions, and petitioner's pleadings establish that he was anxious and concerned.

Last, petitioner complains that because of the delay, his Brazoria County conviction for sexual assault became final and available for impeachment purposes. However, as noted by the state court, under state law the Brazoria County conviction was not petitioner's only conviction available for impeachment, thereby greatly lessening any prejudice caused by the delay. This Court is bound by the state court's finding that one or more of petitioner's dozen or so prior convictions were available for impeachment purposes under state law. Further, the State clearly stipulated at the hearing that it would not use the Brazoria County sexual assault case for impeachment purposes if petitioner elected to testify at trial during guilt-innocence. (*Id.*, p. 4.) Accordingly, petitioner did not show that the delay resulted in the potential use of otherwise inadmissible criminal convictions against him for impeachment purposes.

In reliance on *Hooey*, petitioner argued at the hearing that because of the pending Brazoria County charges during his incarceration, he ineligible for participation in certain prison educational activities, job assignments, and preferential custody classifications. The State did not dispute these allegations at the hearing.

In short, the record shows that the delay resulted in petitioner's experiencing anxiety and concern, and being ineligible to participate in certain prison programs. The importance of these results is not without significance; but, in a balance of all four *Barker* factors, it cannot be said that petitioner's constitutional right to a speedy trial was violated.

The Court has carefully reviewed the state court's determinations and the parties' arguments, and concludes that petitioner fails to present clear and convincing evidence that would rebut the presumption of correctness of the state court's adjudication of petitioner's speedy trial claim. The state court's findings reasonably applied the law to the facts, were not inconsistent with clearly established federal law as determined by the Supreme Court, and were not objectively unreasonable. Petitioner fails to show a basis for the relief he seeks, and respondent is entitled to summary judgment on petitioner's speedy trial claim. 28 U.S.C. § 2254(d)(1).

## V. **CONCLUSION**

Accordingly, the Court **ORDERS** as follows:

1. Respondent's motion for summary judgment (Docket Entry No. 12) is **GRANTED**.

2. The petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

3. This case is **DISMISSED WITH PREJUDICE**.

4. Petitioner has not made a substantial showing of the denial of a constitutional right. A certificate of appealability is **DENIED**.

The Clerk is to provide a copy of this order to all parties.

Signed at Houston, Texas, on this 21st day of November, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE